Jennifer A. Golinveaux (SBN: 203056)
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1506
jgolinveaux@winston.com

Diana Hughes Leiden (SBN: 267606)
Winston & Strawn LLP
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071-1543
Telephone: (415) 591-1506
dhleiden@winston.com

Attorneys for Movants
ALTICE USA, INC. and
CSC HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Third Party Subpoena Issued to RIGHTSCORP, INC.<br><br>BMG RIGHTS MANAGEMENT (US) LLC; UMG RECORDINGS, INC.; CAPITOL RECORDS, LLC; CONCORD MUSIC GROUP, INC.; and CONCORD BICYCLE ASSETS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALTICE USA, INC. and CSC HOLDINGS, LLC,<br><br>    Defendants. | **Case No.** 2:23-mc-00163<br><br>**Related to No. 2:22-cv-00471-JRG in the United States District Court Eastern District of Texas Marshall Division**<br><br>**NOTICE OF MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO RIGHTSCORP, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 45, on a date and at a time to be determined by this Court, located in the First Street U.S. Courthouse at 350 W. 1st Street, Suite 4311 Los Angeles, CA 90012-4565, Movants Altice USA, Inc. and CSC Holdings, LLC (collectively, "Altice"), shall and hereby do move the Court for an order compelling third party Rightscorp, Inc. ("Rightscorp") to produce documents responsive to Altice's subpoena in *BMG Rights Management (US) LLC, et al. v. Altice USA, Inc., et al.*, No. 2:22-cv-00471-JRG (E.D. Tex.). The motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Diana Hughes Leiden ("Leiden Decl.") filed concurrently with this motion and the exhibits thereto; all other pleadings and papers on file in this action; all further argument or authorities as the Court may request or permit; and all matters presented at the hearing on this motion.

Pursuant to Local Rule 7-3, Altice certifies that it has conferred in good faith with counsel for Rightscorp on multiple occasions, beginning on August 17, 2023 and thereafter, but the parties were unable to reach a resolution.

Dated: November 14, 2023    Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Diana Hughes Leiden*
Jennifer A. Golinveaux
Diana Hughes Leiden

*Attorneys for Movants*
ALTICE USA, INC. and
CSC HOLDINGS, LLC

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................... 2

A. The Texas Action for Copyright Infringement .................................................. 2

B. Rightscorp's Business of Enforcement ............................................................. 4

C. Altice's Subpoena To Rightscorp and Rightscorp's Objections and Refusals to Produce Key Documents .................................................................. 5

III. LEGAL STANDARD ............................................................................................ 6

IV. ARGUMENT ......................................................................................................... 6

A. This Court Should Transfer This Motion to Texas ............................................ 6

B. Altice Seeks Highly Relevant Discovery ........................................................... 9

1. Data Underlying the Verification and Notice-Sending Process (RFP No. 1, 2, 8-9, 11, 12, 16-18, 27-30, 36, 38-39, and 41) ......................................... 9

2. Documents Relating to Rightscorp's Services and Relationship with Plaintiffs (RFP Nos. 3, 4, 23, 24, 35, 40, and 44) ........................................ 13

V. CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3B Medical, Inc. v. Resmed Corp.*,
    2016 WL 6818953 (S.D. Cal. Oct. 11, 2016) .......................................................... 8

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ............................................................................. 10

*Agincourt Gaming, LLC v. Zynga, Inc.*,
    2014 WL 4079555 (D. Nev. Aug. 15, 2014) ......................................................... 8

*Argento v. Sylvania Lighting Servs. Corp.*,
    2015 WL 4918065 (D. Nev. Aug. 18, 2015) ..................................................... 7, 8

*BMG Rights Management (US) LLC, et al. v. Altice USA, Inc., et al.*,
    No. 2:22-cv-00471-JRG (E.D. Tex.) ................................................................. 1, 2

*Cont'l. Auto. Sys., U.S., Inc. v. Omron Auto. Elec., Inc.*,
    2014 WL 2808984 (N.D. Ill. June 20, 2014) ........................................................ 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................................ 10

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
    301 F.R.D. 426 (N.D. Cal. 2014) ......................................................................... 7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................................... 10

*Scott v. Carson Sheriff Dep't*,
    2020 WL 4108691 (C.D. Cal. Jan. 15, 2020) ....................................................... 6

*In re Subpoena to Kia Motors Am., Inc.*,
    2014 WL 2118897 (C.D. Cal. Mar. 6, 2014) .................................................... 8, 9

*Wultz v. Bank of China, Ltd*,
    304 F.R.D 38 (D.D.C. 2014) ................................................................................ 7

**Statutes**

Digital Millennium Copyright Act ................................................................................ 3

DMCA ..................................................................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 6

Fed. R. Civ. P. 45(a)(1)(C) ........................................................................................ 6

Fed. R. Civ. P. 45(d)(2)(B)(i) ................................................................................ 6, 7

Fed. R. Civ. P. 45(f) ............................................................................................... 7, 8

Fed. R. Civ. P. 45(g) .................................................................................................. 7

Federal Rules of Civil Procedure Rule 45 ................................................................ 6

Rule 26 ....................................................................................................................... 6

Rule 26(b) .................................................................................................................. 6

Subpoena *Duces Tecum* ............................................................................................ 5

v
MOTION TO COMPEL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Altice USA, Inc. and CSC Holdings, LLC (collectively, "Altice"), internet service providers ("ISP"), have been sued for copyright infringement by BMG Rights Management (US) LLC ("BMG"); UMG Recordings, Inc.; Capitol Records, LLC; Concord Music Group, Inc; and Concord Bicycle Assets, LLC's (collectively, "Plaintiffs") in the Eastern District of Texas[1] (the "Underlying Litigation"). The basis of the suit is the Plaintiffs' allegation that Altice's internet subscribers infringed on copyrightable works by downloading them without authorization between 2018 and 2022. The Plaintiffs seek to hold Altice liable for vicarious and contributory copyright infringement in connection with its provision of internet service to these subscribers and seek damages from Altice of over a billion dollars.

Years before the filing of this suit against Altice, Plaintiff BMG engaged Rightscorp, Inc. ("Rightscorp"), a third-party software company that provides a range of services including detecting and monitoring online piracy, to track the activities of Altice subscribers on peer-to-peer file sharing sites. BMG then authorized Rightscorp to prepare copyright infringement notices to send to Altice for instances it allegedly observed of infringement of BMG's copyrighted works. Thereafter, the other named Plaintiffs each hired Rightscorp for the purpose of compiling evidence of infringement. As such, Rightscorp's system was used to detect alleged downloads by Altice's internet subscribers that serve as the basis for the secondary copyright infringement case against Altice by all Plaintiffs. To establish that each and every alleged direct copyright infringement occurred—a prerequisite to hold Altice secondarily liable for the alleged infringement—the Plaintiffs will rely on both Rightscorp's data associated with detecting musical works on Altice's system and

---

[1] The underlying case was filed on December 14, 2022 and is titled *BMG Rights Management (US) LLC, et al. v. Altice USA, Inc., et al.*, No. 2:22-cv-00471-JRG (E.D. Tex.)

matching them to Plaintiffs' copyrighted works, and the resulting notices that Rightscorp sent to Altice. Thus, the ***reliability*** and ***accuracy*** of Rightscorp's system in detecting alleged infringement and generating these notices is central to Plaintiffs' claims, and critically, at the heart of Altice's defenses.

Accordingly, on June 16, 2023, Altice served a third-party subpoena on Rightscorp seeking documents related to (1) information relating to the notices of alleged infringement and the technical systems and operations utilized to generate notices of alleged infringement and (2) its services and relationships with the Plaintiffs. Rightscorp (who is represented by the Plaintiffs' counsel) responded to the subpoena with a variety of objections and has failed to either provide such documents or provide any information about the burden of the scope of production.

As detailed below, there is no basis for Rightscorp to resist the production of documents critically relevant to the claims and defenses in the Underlying Litigation. Sustaining Rightscorp's objections would allow the Plaintiffs in the Underlying Litigation to use Rightscorp evidence to prop up its direct infringement case while preventing Altice from obtaining critical information to rebut that evidence. Altice's instant Motion should be granted.

## II. BACKGROUND

### A. The Texas Action for Copyright Infringement

On December 14, 2022, the Plaintiffs filed an action in the Eastern District of Texas for copyright infringement against Altice. *See BMG Rights Management (US) LLC, et al. v. Altice USA, Inc., et al.*, No. 2:22-cv-00471-JRG (E.D. Tex.). The Plaintiffs in that action are record companies that produce, manufacture, distribute, sell, and license commercial sound recordings, and music publishers that develop songwriters and acquire, license, and otherwise exploit musical compositions, both in the United States and internationally. Compl., ¶ 7.

In that action, the Plaintiffs seek to hold Altice, an ISP, liable for alleged copyright infringement occurring over Altice's network. The Plaintiffs allege that

Altice's subscribers infringed their copyrighted works by downloading them without authorization through BitTorrent or other publicly available peer-to-peer file sharing tools between 2018 and 2022. *Id.* ¶ 8. The Plaintiffs' theory of liability is that Altice tolerated and effectively contributed to and benefited from infringement by Altice's subscribers. *Id.* The Plaintiffs' claims for vicarious and contributory copyright liability boil down to the contention that Altice should have, but did not, swiftly terminate any household or business whose IP address was identified in more than a couple of notices of infringement. Each of these claims requires that Plaintiffs first prove instances of direct copyright infringement by Altice's subscribers. This case is the latest attempt by the music industry to engineer a copyright-liability regime that makes ISPs responsible for all infringement that takes place on the internet—and thereby turn ISPs into their *de facto* enforcers.

Plaintiffs' infringement notices and related data—their underlying evidence of alleged direct infringement—were generated by third parties, including Rightscorp, the party who is the respondent to the subpoena that is subject of this Motion. Altice has asserted a number of defenses to the Plaintiffs' claims, including that it is protected by the "safe harbor" set forth in the Digital Millennium Copyright Act ("DMCA") because it took reasonable steps to respond to notices of alleged copyright infringement—including from Rightscorp, a company whose business practice is to "spam" ISPs like Altice with thousands of notices a day to manufacture the appearance of repeat infringement by its subscribers. Indeed, Rightscorp intentionally sends out millions of notices a year, and includes threatening settlement demands therein, as it stands to gain a portion of each settlement received as a result of each notice. In reality, the volume of these notices is so high that it risks crippling Altice's systems.

The Underlying Litigation is proceeding on a swift schedule, with fact discovery closing on January 30, 2024 and trial set for September 2024.

**B.      Rightscorp's Business of Enforcement**

Since at least 2011, Plaintiff BMG contracted with Rightscorp, a software company that manages and enforces large portfolios of copyrights on behalf of copyright owners. Specifically, Rightscorp monitors the internet, locates alleged copyright violators by identifying their IP addresses, and then prepares notices of copyright infringement.

In anticipation of this litigation, the other Plaintiffs also each hired Rightscorp as a consultant for the purpose of compiling evidence of infringement for this lawsuit. The scope of Rightscorp's relationship with the other Plaintiffs is based exclusively on the same agreement with BMG. Therefore, under the agreements with all the Plaintiffs, Rightscorp prepares copyright infringement notices to send to ISPs, such as Altice, for instances of alleged infringement. While Rightscorp is an agent of the parties for purposes of compiling evidence in this lawsuit, it simultaneously, under the plain terms of these collective agreements, also gets (i) a portion of any settlement demand obtained as a result of each notice that it sends to ISPs on behalf of the Plaintiffs and (ii) a portion of any recovery obtained by the Plaintiffs in this lawsuit. Rightscorp is undoubtedly a financially interested party in the Underlying Litigation.

In practice, the Plaintiffs provide Rightscorp a list of works for it to monitor. Rightscorp then utilizes methods and processes for identifying potential or actual instances of alleged infringement, compares the metadata of an allegedly infringing file with metadata from Rightscorp' own database(s), and then generates a notice of infringement. Finally, Rightscorp should then request that the ISP for that IP address forward that notice to the user.

However, the complaint in the Underlying Litigation does not specify how the alleged infringement was identified, how the notices were created, or how, if at all, the information they purported to contain was verified. Instead, Plaintiffs have repeatedly stated that they outsource this process to Rightscorp and that Rightscorp is the entity that maintains this information. Given that the Plaintiffs' case for infringement relies

substantially if not entirely on Rightscorp's notices, the accuracy and reliability of Rightscorp's systems, Rightscorp's investigation of and supposed "matching" of files located on Altice's network to the Plaintiffs' works, and subsequent notices it sent to Altice, as well as its relationship with the Plaintiffs, are the directly relevant to the case, and subject of the subpoena in question.

### C. Altice's Subpoena To Rightscorp and Rightscorp's Objections and Refusals to Produce Key Documents

On June 16, 2023, Altice served Rightscorp with a Subpoena *Duces Tecum* issued by the Eastern District of Texas demanding the production of documents related primarily to (1) information relating to the notices of alleged infringement and the technical systems and operations utilized to generate notices of alleged infringement and (2) its services and relationships with the Plaintiffs. *See* Declaration of Diana Hughes Leiden ("Leiden Decl."), Ex. A. Rightscorp, who is being represented by the same counsel who is also representing the Plaintiffs, responded to the document requests on June 30, 2023, asserting various boilerplate objections to relevance and scope and agreeing to produce only limited categories of documents and information. *Id.*, Ex. B.

To date, Rightscorp only has produced (i) notices of alleged copyright infringement it purportedly sent to Altice, (ii) spreadsheets that appear to contain metadata extracts from those notices, (iii) a handful of screenshots identifying databases or dashboards that appear to summarize notices sent to ISPs, like Altice, (iv) monthly reports generated by non-parties tracking albums and songs across the music charts; and (v) internal Rightscorp emails requesting an update to its system to account for updates in Plaintiffs' music catalogs. *Id.*, ¶ 8. Rightscorp *has not produced* any technical information explaining how this information was generated – such as documents regarding the systems it utilized to assess alleged infringement, including the initial identification and verification stages, and the systems used to send notices of alleged infringement. *Id.* Rightscorp similarly *has not produced* any

documents relating to its services, including its relationship with any of the Plaintiffs, and any emails whatsoever. *Id.* This is woefully deficient as a substantial portion of the relevant discovery relating to the evidence of direct infringement in this case must come from Rightscorp.

Altice has raised its concerns by written correspondence on August 4, 2023 and Rightscorp responded on August 15, 2023. *Id.*, Exs. C & D. Thereafter, the parties met and conferred on August 17, 2023. *Id.*, ¶ 7. Counsel for Rightscorp agreed to take Altice's positions back to its client, but has failed to provide any response for over three months. *Id.* Further, Rightscorp's most recent document production on September 26, 2023 still failed to produce the documents requested by Altice's subpoena and critical to Altice's defense. *Id.*, ¶ 8.

### III. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure expressly authorizes a party to issue a subpoena commanding the person to whom it is directed to produce and permit inspection of designated records. Fed. R. Civ. P. 45(a)(1)(C). If the third party timely serves objections to the subpoena, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "The scope of discovery allowed under a Rule 45 subpoena is the same as the scope of discovery allowed under Rule 26." *Scott v. Carson Sheriff Dep't*, 2020 WL 4108691, at *3 (C.D. Cal. Jan. 15, 2020). Under Rule 26(b), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

### IV. ARGUMENT

#### A. This Court Should Transfer This Motion to Texas

Federal Rule of Civil Procedure 45 provides that any motion to compel

1  compliance with a subpoena must be brought in the "court for the district where
2  compliance is required[.]" Fed. R. Civ. P. 45(d)(2)(B)(i). Thus, Altice filed this
3  Motion in the Central District of California, where Rightscorp is located. However,
4  "[t]he court for the district where compliance is required—and also, after a motion is
5  transferred, the issuing court"—can hold in contempt a non-compliant party. Fed. R.
6  Civ. P. 45(g). "When the court where compliance is required did not issue the
7  subpoena, it may transfer a motion under this rule to the issuing court if the person
8  subject to the subpoena consents or if the court finds exceptional circumstances." *See*
9  Fed. R. Civ. P. 45(f); *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301
10 F.R.D. 426, 428 (N.D. Cal. 2014). Here, exceptional circumstances justify transfer to
11 the Eastern District of Texas.
12     First, transfer will "advance[] judicial economy, avoid[] the potential for
13 inconsistent rulings, and prevent[] disruption of the management of the underlying
14 litigation." *Argento v. Sylvania Lighting Servs. Corp.*, 2015 WL 4918065, at *7 (D.
15 Nev. Aug. 18, 2015). This case involves multiple third parties, who perform similar
16 services to Rightscorp and have been retained by the Plaintiffs, who have relevant
17 information and are based in different jurisdictions. The Eastern District of Texas has
18 issued subpoenas to these other third-parties and should therefore be the forum that
19 oversees and manages third-party discovery due to the overlapping issues of fact and
20 law. Exceptional circumstances also justify transfer where, as here, "a similar motion
21 to compel" could be pending that "dealt with [a] subpoena directed at a different party
22 but sought similar items. *See Moon Mountain*, 301 F.R.D. at 429; *see also*, *e.g.*,
23 *Cont'l. Auto. Sys., U.S., Inc. v. Omron Auto. Elec., Inc.*, 2014 WL 2808984, at *2
24 (N.D. Ill. June 20, 2014) (transferring motion due to risk of inconsistent rulings);
25 *Wultz v. Bank of China, Ltd*, 304 F.R.D 38, 46 (D.D.C. 2014) (transferring motion
26 because "potential for inconsistent rulings should be avoided and weighs in favor of a
27 single judicial officer deciding all of these disputes"). Here, Judge Gilstrap, who
28 presides over the Underlying Litigation, is familiar with the issues involved in this

action, and is well equipped to resolve this dispute efficiently, thus promoting judicial economy. Indeed, Judge Gilstrap is actively presiding over a number of discovery disputes between the parties that relate to similar issues, including a motion to compel jointly filed by all parties. As such, there is no reason to disrupt the issuing court's management of the Underlying Litigation.

Next, this Court should transfer this Motion to the E.D. Texas because Rightscorp is essentially a party to the Texas action. While the advisory committee's notes to Rule 45(f) state that the "prime concern" for a court considering whether to transfer a motion to compel "should be avoiding burdens on local nonparties," that concern carries less weight when the third-party has identified no burden and its interests are more akin to party interests. *See In re Subpoena to Kia Motors Am., Inc.*, 2014 WL 2118897, at *1 (C.D. Cal. Mar. 6, 2014) (granting motion to transfer where counsel for the party opposing transfer represents a party in the underlying action). As mentioned above, the Plaintiffs' theory of liability in the Underlying Litigation is based on the notices sent by Rightscorp to Altice. Further, Rightscorp is being represented by the same attorneys who are also representing the Plaintiffs. Tellingly, Rightscorp and the Plaintiffs are engaged in a litigation consulting agreement, for which the Plaintiffs have agreed to give Rightscorp a portion of any monetary recovery that it is awarded in this litigation. As such, it is apparent that Plaintiffs and Rightscorp have a common interest in the resolution of the action. *See 3B Medical, Inc. v. Resmed Corp.*, 2016 WL 6818953 (S.D. Cal. Oct. 11, 2016), at *4 (finding that transfer did not turn the nonparty subject to the subpoena because the nonparty was represented by the same law firm that represented the defendant in the underlying matter).

Finally, "courts are less inclined to find a significant burden on the subpoenaed nonparty when it is a large corporation," *Argento*, 2015 WL 4918065, *7; *see also*, *e.g.*, *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *8 (D. Nev. Aug. 15, 2014) ("[C]ourts have indicated that concerns regarding the burdens of

transfer are lessened when the disputed subpoena is directed to a large corporation, rather than an individual person."); *Kia Motors*, 2014 WL 2118897, *1 (same). Here, Rightscorp manages copyright infringement for and is the agent of the Plaintiffs, record labels and music publishers that represent a large swath of the music industry. Therefore, any burden is significantly outweighed by the benefits of transfer.

### B. Altice Seeks Highly Relevant Discovery

As explained below, even if the Court were to retain jurisdiction over the subpoena, Altice's motion should be nonetheless granted as Rightscorp is failing to turn over evidence that is critically relevant to the claims and defenses in the Underlying Litigation.

#### 1. Data Underlying the Verification and Notice-Sending Process (RFP No. 1, 2, 8-9, 11, 12, 16-18, 27-30, 36, 38-39, and 41)

Altice seeks information relating to the notices of alleged infringement and the technical systems and operations utilized to generate notices of alleged infringement. These requests include (i) the underlying data associated with the notices of alleged infringement sent to Altice, including evidence packages (RFP No. 1); (ii) copies of databases and/or dashboards containing data (RFP Nos. 2, 16); (iii) documents relating to Rightscorp's methods or processes for identifying potential or actual instances of infringement (RFP Nos. 8-9); (iv) documents relating to Rightscorp's process of comparing metadata from an allegedly infringing file with metadata from Rightscorp's own databases (RFP No. 11); (v) data relating to all potentially infringing copies of the Copyrighted Works at issue (RFP No. 12); (vi) documents concerning Rightscorp's retention, destruction, or loss of data, including transaction logs (RFP No. 17); (vii) documents related to how infringement was detected on Altice's network (RFP No. 18); (viii) documents concerning the reliability and/or efficacy of the Rightscorp System, including false positive test results, operational audits, technical assessments, the bugs, flaws, weaknesses or improvements to its system, and modifications or changes to its system (RFP Nos. 27, 28); (iv) documents

1  concerning the "Independent Expert Assessment of MarkMonitor Anti-Piracy
2  Methodologies," and "Evaluation of the MarkMonitor AntiPiracy System" reports
3  conducted by third parties Stroz Friedberg and Harbor Labs (RFP Nos. 29, 30) about
4  OpSec's systems[2]; (v) Rightscorp's communications with Altice subscribers about the
5  infringement notices (RFP Nos. 36, 39); (vi) documents relating to complaints
6  regarding Rightscorp or Rightscorp's services (RFP No. 38); and (vii) documents
7  sufficient to identify each individual that contributed to the development of the
8  Rightscorp system and the nature of that contribution (RFP No. 41). *See* Leiden
9  Decl., Ex. A.

10     Here, there is no question that the requested information is relevant. As set
11 forth above, the evidence relating to Rightscorp will be critical to the Plaintiffs'
12 affirmative case and Altice's defenses. Simply put, the determination of every alleged
13 direct copyright infringement relies on the integrity of Rightscorp's system. *See A&M*
14 *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory
15 liability requires that the secondary infringer 'know or have reason to know' of direct
16 infringement."); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169
17 (9th Cir. 2007) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S.
18 913, 930 (2005) ("One infringes contributorily by intentionally inducing or
19 encouraging direct infringement, and infringes vicariously by profiting from direct
20 infringement while declining to exercise a right to stop or limit it.")). Despite this,

---

[2] OpSec (f/k/a "MarkMonitor") is another third-party vendor utilized by the Plaintiffs and their agent the Recording Industry Association of America ("RIAA") to send notices to Altice. The reliability and accuracy of OpSec's system was assessed by neutral third parties Stroz Friedberg and Harbor Labs when OpSec (as opposed to Rightscorp) was chosen by a group of ISPs and rightsholders to act as the infringement detection vendor for the Copyright Alert System. To the extent that Rightscorp has documents relating to these reports—such as documents or comments about the accuracy and reliability of OpSec's system—those would be highly relevant given that the Plaintiffs have stated that they also plan to rely on OpSec notices to prove direct infringement in the Underlying Litigation.

1  Rightscorp is withholding critical information. Rightscorp's responses to these
2  requests are insufficient because it is either improperly standing on its objections to
3  avoid producing documents at all other than the infringement notices themselves, or it
4  limits its production to documents to those "sufficient to show" how infringement was
5  "detected through use of Altice's services" and limits the time period to the "relevant
6  claims period" – January 1, 2017 to December 31, 2022. At present, it is unclear what
7  Rightscorp intends to produce beyond the notices themselves and the small number of
8  categories summarized above. Even after meeting and conferring, Rightscorp has not
9  amended any of its responses, provided any response to Altice's proposals to limit the
10 scope of the requests, or provided its own proposals to limit the scope of these
11 requests. Leiden Decl., ¶ 7.

12 Given that the notices are at the center of the lawsuit between the Plaintiffs and
13 Altice, Altice is seeking evidence concerning the accuracy and reliability of
14 Rightscorp's systems for detecting infringement and sending notices, as well as the
15 data, evidence, records, or information on how Rightscorp verified the files before
16 sending such notices. For example, Rightscorp must produce any data or documents
17 that support, or contradict, the accuracy of the notices on which Plaintiffs are relying
18 in this case. This includes evidence supporting the purported verifications of allegedly
19 infringing files for which Rightscorp monitored, including any documents relating to
20 the audio verification Step, among the other discrete categories of documents set forth
21 in these requests. Rightscorp is also obligated to turn over documents relating to the
22 efficacy of its system, including internal documents relating to the assessments,
23 improvements, and modifications that it made to its systems over the years, as well as
24 external documents and reports from third parties about its system.

25 Further, given the longstanding relationship between Rightscorp and BMG and
26 the current consulting relationship between Rightscorp and the other Plaintiffs (*see*
27 Leiden Decl., Ex. E (Deposition Transcript of Keith Hauprich, BMG's General
28 Counsel at 70:2-22; 90:2-17), it is unreasonable for Rightscorp to impose arbitrary

time limitations to its responses, as it has done. For example, Rightscorp states that it will only produce documents from "the relevant claims period." However, based on the length of the relationship between the Plaintiffs and Rightscorp, Altice does not suspect that there is a meaningful corpus of documents within the January 1, 2017 to December 31, 2022 claims period because it is more likely that the majority of documents and communications about the functionality, reliability, and accuracy of the Rightscorp system took place at or near the inception of the relationship with the Plaintiffs (well before 2017), or shortly thereafter. In other words, it is unlikely that Rightscorp and the Plaintiffs were exchanging communications about the functionality of this system, that is responsible for generating thousands of infringement notices over the course of many years, only during the claims period of the instant suit. These unilateral limitations should not stand because, for one, they will clearly exclude relevant evidence, and second, because Rightscorp has never provided any evidence of burden to provide documents outside of the date limitation that it proposed.

Finally, Rightscorp has also not explained how the production of this information poses any undue time, burden, or monetary expense. Rightscorp is an established company whose clients, these massive record labels, utilized Rightscorp for years to orchestrate and ultimately prosecute a suit against Altice. Rightscorp has never articulated that its historical systems are not maintained and accessible, nor any burden in producing the data underlying the verification and notice-sending process. In fact, Rightscorp's entire reason for existence is to prepare and maintain evidence of alleged infringement – if Rightscorp cannot fully provide any information regarding the systems that generated that data, the only possible answer is that the data was purposefully destroyed or not properly maintained, despite Rightscorp's full knowledge that it would be necessary to the defense of any alleged infringer.

As such, Rightscorp's objections ring hollow and this Court should allow discovery into these issues.

## 2. Documents Relating to Rightscorp's Services and Relationship with Plaintiffs (RFP Nos. 3, 4, 23, 24, 35, 40, and 44)

The next category of documents Altice seeks relate to Rightscorp's relationship with the Plaintiffs. These requests include (i) documents concerning any query, offer, pitch promotion, or proposal by Rightscorp to Plaintiffs (RFP No. 3); (ii) agreements between Rightscorp and Plaintiffs relating to peer-to-peer copyright infringement (RFP No. 4); (iii) documents concerning any financial interest Rightscorp may have, including but not limited to Plaintiffs' business, copyrights, outcome of other litigations, and settlements relating to its notices (RFP Nos. 23, 24, 44); (iv) communications with Plaintiffs or other third parties regarding the Copyright Alert System or other inter-industry agreements (RFP No. 35); and (v) documents relating to the inclusion of an offer of settlement in Altice's notices of alleged infringement (RFP No. 40). *See* Leiden Decl., Ex. A.

Again, these requests are plainly relevant because they bear on the operation and accuracy of the Rightscorp system, which are squarely relevant to the Plaintiffs' direct infringement case. For example, Altice should be entitled to any agreements between Rightscorp and the Plaintiffs to understand the scope of the services that it was providing, as well as the systems in place to execute such services. Moreover, understanding whether Rightscorp made multiple pitches or proposals to the Plaintiffs overtime can shed light into how and why the system has been upgraded and improved over the course of the parties' relationship. Next, insight into Rightscorp's financial interest or receipt of portions of settlement payments that it sought to extract from Altice's subscribers will also reveal information about its bias and motivations to send huge numbers of notices to Altice (whether or not they were valid). Finally, standards or agreements through which the broader industry sent notices are relevant to determining the reasonableness of both the notice sender's actions and the ISP's

response.[3] This same information bears on the applicability of the DMCA safe harbor and Altice's reasonableness in responding to Rightscorp's notices.

Rightscorp is a key third party in this case, serving as the primary source of purported evidence of alleged direct infringement and operating as Plaintiffs' agent. Documents relating to Rightscorp's actions, bear on its business purposes and motivations, which is directly relevant to its credibility. As such, Rightscorp should produce a comprehensive set of such materials, as well as its communications with Plaintiffs in response to these requests. Moreover, as stated above, the time period must extend back to the point when Rightscorp first approached any of the Plaintiffs. Again, given the length of the relationships, it is unlikely that there will be any meaningful documents created five to ten years after the relationship between the parties started.

## V. CONCLUSION

For the foregoing reasons, Altice respectfully requests that the Court (1) transfer enforcement of this motion to the Eastern District of Texas, or (2) in the alternative, overrule Rightscorp's improper objections and order Rightscorp to produce documents responsive to the third-party subpoena.

---

[3] As noted above, the Copyright Alert System was an agreement between major ISPs (including Altice's predecessor entity, Cablevision), content owners (including Plaintiff Universal Music Group), the RIAA, and the Motion Picture Association of America ("MPAA") to address and deter online copyright infringement. CAS established "[a] reasonable, alert-based approach [to] help to protect legal rights granted by copyright and stem the unlawful distribution of copyrighted works, while providing education, privacy protection, fair warning, and an opportunity for review that protects the lawful interests of consumers." The CAS MOU required participating ISPs to develop, implement, and enforce copyright alert programs under which copyright owners would send infringement notices to participating ISPs (to be forwarded to subscribers) and set out steps that ISPs would take in response to multiple notices of infringement relating to a single subscriber, and established limits to the number of notices an ISP was required to process.

| | |
|---|---|
| Dated: November 14, 2023 | Respectfully submitted,<br><br>WINSTON & STRAWN LLP<br><br>By: */s/ Diana Hughes Leiden*<br>Jennifer A. Golinveaux<br>Diana Hughes Leiden<br><br>*Attorneys for Movant*<br>ALTICE USA, INC. and<br>CSC HOLDINGS, LLC |